IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN MCCREESH,                          :
                                         :
        Plaintiff,                       :
                                         :          Civil Action
            v.                           :
                                         :          No. 23-973
ULTA BEAUTY, INC.,                       :
                                         :
        Defendant.                       :
                                         :

**MEMORANDUM**

**J. Younge**                                                **July 15, 2024**

## I.      INTRODUCTION

Currently before this Court is Defendant Ulta Beauty, Inc.'s Motion for Summary

Judgment.  (ECF No. 16.)  The Court finds this Motion appropriate for resolution without oral

argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, said

Motion is Granted.

## II.     FACTUAL BACKGROUND

Plaintiff Karen McCreesh worked as a stylist for Defendant Ulta Beauty, Inc. (hereinafter

"Ulta") from July 9, 2010 until March 4, 2022.  (Compl. ¶¶ 21, 44, ECF No. 1; Defendant's

Statement of Undisputed Material Facts ("Def.'s SUMF"), ECF No. 16-2.)  Plaintiff is a white

woman.  (Compl. ¶ 20, ECF No. 1.)  Plaintiff's suit stems mainly from an incident involving a

black customer and a subsequent complaint to management, as well the allegation that the

District Manager had a racial preference towards hiring black employees.  (Compl. ¶¶ 24-26.)

On February 4, 2022, Plaintiff was scheduled for a two-hour hair coloring appointment

with a black customer.  (Compl. ¶ 27; Def.'s SUMF ¶ 31, ECF No. 16-2.)  The appointment ran

longer than expected because Plaintiff wasn't able to lighten the customer's hair enough during the two hours of service.  (Compl. ¶ 28, ECF No. 1.)  The customer, upset that she may have to spend further time and money getting her hair colored and that her scalp was burning, requested to speak to a manager.  (Compl. ¶ 29; Def.'s SUMF ¶¶ 38-41, 44, ECF No. 16-2.)  The customer remarked, "it figures she's Black," after Plaintiff brought her a manager.  (Compl. ¶¶ 30-31, ECF No. 1.)  Plaintiff left the room while the manager rinsed the remaining bleach from the customer's hair but returned, as Defendant relates it, to tell her side of the story.  (Def.'s SUMF ¶¶ 45-49, ECF No. 16-2.)  The incident escalated between Plaintiff and the customer, with the customer warning Plaintiff that she would "slap the shit out of you" and Plaintiff calling the customer an "animal."  (Compl. ¶ 34; Shonya Payne Dep. at 16:5-7, ECF No. 16-18; Damon Mitchell Dep. at 53:19-24, 54:1-11, ECF No. 16-17.)  Plaintiff's coworkers proceeded to deescalate the situation, and the customer left without further incident.  (Def.'s SUMF ¶¶ 53-54, ECF No. 16-2.)  Plaintiff lodged a complaint with the General Manager based on the customer's intimidating behavior and finished the rest of her workday.  (Def.'s SUMF ¶ 55; Compl. ¶ 35, ECF No. 1.)

Feeling that the situation was not handled correctly, the Plaintiff filed a complaint of racial discrimination with Defendant's Human Resources Department on February 8, 2022.  (Compl. ¶¶ 36-38.)  Sometime thereafter, Plaintiff began interviewing at a different salon where her daughter worked and ultimately secured new employment there in March 2022.  (Pl. Dep. at 91:6-25, 92:1-9, ECF No. 16-8.)  Defendant alleges that it attempted to contact Plaintiff multiple times to discuss her complaint.  (Def.'s SUMF ¶¶ 62-63, ECF No. 16-2.)  On February 18, 2022, Defendant scheduled a grievance meeting outside of Plaintiff's work schedule to address her complaint.  (Def.'s SUMF ¶ 65; Complaint ¶ 39, ECF No. 1.)  At this meeting, the

District Manager asked Plaintiff multiple times what Ulta could do to support her, and Plaintiff indicated that she did not know what they could do and expressed frustration that they had not reached out to her earlier given the customer's intimidating behavior, though the Defendant contends that its managers attempted to make contact several times.  (Def.'s SUMF ¶¶ 66-70, ECF No. 16-2.)  The District Manager asked Plaintiff to reach out to her directly after considering what Defendant could do to address her complaint and ended the meeting in the meantime.  (Def.'s SUMF ¶ 70.)  On March 4, 2022, Plaintiff resigned from her position and began work at the other salon, arguing that she was constructively discharged based on this series of events.  (Compl. ¶ 44, ECF No. 1.)

Plaintiff filed her Complaint with this Court on March 13, 2023, alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act after exhausting her administrative remedies. (Compl.) Defendant filed its Motion for Summary Judgment on May 20, 2024, arguing that Plaintiff has not set forth evidence of discrimination or that she was subjected to an adverse employment action.  (Motion for Summary Judgment, ECF No. 16.)  This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

## III.   LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine*.  See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the

outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  *Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001).  Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

IV.     **DISCUSSION**

A.  *Plaintiff Has Not Met Her of Burden in Establishing That She Was Subjected to Discrimination under Title VII of the Civil Rights Act of 1964 or the Pennsylvania Human Relations Act.*

Both Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act prohibits employers from refusing to hire or from discharging any individual because of their race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2(a)(1), *et seq.*; 43 P.S. §§ 955, *et seq.*[1]   To demonstrate a *prima facie* case of "reverse race discrimination," a plaintiff must show that: (1) they are qualified for their position; (2) they have suffered an adverse employment action; and (3) the adverse employment action gave rise to an inference of discrimination. *Ellis v. Bank of New York Mellon Corp.*, 837 Fed. App'x. 940, 941 (3d Cir. 2021). Here, it is undisputed that the Plaintiff was qualified for her position.  However, Plaintiff's claim of reverse race discrimination falls short with respect to the last two prongs.

<u>I. Plaintiff Has Not Provided Sufficient Evidence to Demonstrate That She Was Constructively Discharged.</u>

An adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004).  Resignation can constitute an adverse employment action when there was a constructive discharge.  Whether a plaintiff has been constructively discharged is analyzed objectively.  The working conditions must be so unpleasant that a reasonable person in the employee's shoes would resign. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993).  This is a high bar to surmount.  Factors to

---

[1] An employment discrimination claim under the Pennsylvania Human Relations Act is interpreted with its parallel federal counterpart-Title VII of the Civil Rights Act. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

consider include threats of demotion, reduction of pay or benefits, alteration of job responsibilities, and unsatisfactory job evaluations. *Id.*

Here, plaintiff has failed to demonstrate that any of the factors under *Clowes* support her argument.  It is undisputed that Plaintiff did not receive threats of demotion or unsatisfactory job evaluations.  Plaintiff's pay or benefits were not reduced,[2] nor were her job responsibilities altered. The lack of *Clowes* factors supporting Plaintiff's argument is not dispositive but, while Plaintiff has offered additional arguments in support of a finding of constructive discharge, these are unsupported by the record.

Specifically, Plaintiff argues that the Defendant refused to comfort and provide her support following the incident with the customer. (Pl. Dep., at 77:12-14, ECF No. 16-8.)[3] Plaintiff submits that Defendant's inaction made her reasonably believe that Ulta condoned race-based conduct, which provided her a legitimate justification to resign. (Pl. Dep., at 90:15-21.) This blanket statement is unsupported by the weight of the evidence.  The record fails to demonstrate that Plaintiff's working conditions were so unpleasant that a reasonable person would resign. According to Plaintiff, after the incident, the District Manager declared the customer's behavior was unacceptable. (Pl. Dep., at 79:16-19.) In the interim, Plaintiff began interviewing at her daughter's salon where she ultimately secured new employment (Pl. Dep., at 91:6-25, 92:1-9.)  At Plaintiff's grievance meeting, the District Manager asked the Plaintiff several times what they could do to support her. (Def.'s SUMF ¶¶ 66-70, ECF No. 16-2.)

---

[2] Plaintiff testified that she lost pay due to the incident. (Pl. Dep., at 93:10-94:3, ECF No. 16-8.) However, nothing in the record supports her contentions and as such cannot be treated as a material fact to disable this court from granting summary judgment to the Defendant.

[3] Though this does not present an issue of fact that prevents summary judgment, the Plaintiff and Defendant have conflicting accounts of whether Plaintiff was contacted to discuss the incident prior to her meeting with the District Manager.

Plaintiff's belief that the Defendant condoned race-based conduct is purely subjective, and Plaintiff has provided no evidence that would compel a reasonable person in her position to believe that she was forced to resign. Hence, the Court finds that the Plaintiff has failed to provide sufficient evidence as to any material fact which would demonstrate that Plaintiff was constructively discharged.

<u>II. Even if Plaintiff Had Provided Sufficient Evidence to Establish Constructive Discharge, Such Evidence Does Not Give Rise to an Inference of Discrimination.</u>

Even if this matter was sent to a jury to determine whether the Plaintiff was constructively discharged, there is still no evidence creating an inference of discrimination. An inference of discrimination exists when an employer is treating some people less favorably than others. *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999). A plaintiff must demonstrate some relationship between their membership in a protected class and the alleged adverse employment decision. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Further, while the race of the individuals responsible for the adverse employment action is certainly relevant, "it is insufficient to establish a prima facie case of discrimination without more." *Iadimarco v. Runyon*, 190 F.3d 151, 156 (3d Cir. 1999).

Here, Plaintiff presents that, when she advised the General Manager about the guest's threatening and racial comments, the General Manager stated that the guest would be escorted out. (Pl. Dep., at 79:16-19, ECF No. 16-8) However, according to the Plaintiff, once the General Manager met with the guest and heard her complaints of racial profiling, he changed his tone. (Pl. Dep., at 81:24-82:9.) Thus, according to the Plaintiff, the entire situation contained racial overtones and the situation would have been handled differently had she also been black. This alone does not create an inference of discrimination. Plaintiff provides no evidence to demonstrate that the series of events were racially motivated or how the customer's invocation of

race - not the Defendant's - somehow influenced the Defendant's subsequent decision on how to handle the scenario. Contrary to Plaintiff's assertions, the record reveals that the Defendant's employees were seeking to deescalate the scenario rather than discriminate against her based on her race. (Def.'s SUMF ¶¶ 46-54, ECF No. 16-2.) Plaintiff also admitted that the Defendant never treated her differently because of her race. (Pl. Dep., at 115:16-22.) Plaintiff's argument that summary judgment is inappropriate because the incident and its aftermath was focused on race is simply unsupported by the record.

B. *Plaintiff Has Not Met Her Burden in Establishing That She Was Subjected to Retaliation Under Title VII of the Civil Rights Act or the Pennsylvania Human Relations Act.*

Employment retaliation claims are subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, wherein the plaintiff employee first makes a *prima facie* case of discrimination, the defendant employer then has the burden of showing a legitimate, nondiscriminatory reason for the adverse employment decision, and, lastly, the plaintiff has the burden of showing that the reason advanced was pretextual. *Moskowitz v. Neshaminy Sch. Dist.*, No. CV 20-5016, 2022 WL 4225398, at *9 (E.D. Pa. Sept. 13, 2022) (quoting *Krouse v, American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Id.* A plaintiff must prove that the defendant's adverse employment decision would not have occurred "but for" the plaintiff's protected conduct. *Univ. of Texas v. Nassar*, 570 U.S. 338, 361 (2013). Here, while Plaintiff contacting human resources qualified as protected conduct, she has not presented any evidence to support a finding under prongs two and three.

<u>I.  Plaintiff Has Not Provided Sufficient Evidence to Demonstrate an Adverse
Employment Action by the Defendant After or Contemporaneous with Her Protected
Activity.</u>

Plaintiff argues that she was constructively discharged from her position after contacting

Human Resources, alleging racial discrimination. (Pl. Dep., at 131:9-25; 132:1-18, ECF No. 16-

8.) Plaintiff's argument that she was constructively discharged in retaliation for this complaint

fails for the same reasons as in her discrimination claim.  After lodging her complaint, Plaintiff

did not receive threats of demotion or unsatisfactory job evaluations, her pay or benefits were not

reduced, and her job responsibilities were not altered.  Following Plaintiff's complaint and

meeting with the District Manager, she was asked to reach out to consider what Ulta could do to

address her complaint.  (Def.'s SUMF ¶ 70, ECF No. 16-2.) Despite this, Plaintiff decided to

resign and began working at another salon.  (Compl. ¶ 44, ECF No. 1.) Once again, outside of

Plaintiff's subjective perceptions, she presents no evidence amounting to a constructive

discharge.

<u>II.  Plaintiff Has Not Provided Sufficient Evidence to Demonstrate a Causal Connection
Between Her Protected Activity and an Adverse Action.</u>

Even should this Court accept that there was an adverse action taken by Defendant, the

Plaintiff would still be unable to demonstrate a causal connection between her protected conduct

and the Defendant's actions.  Plaintiff argues that there is temporal proximity between her

complaint with Human Resources and her constructive discharge.  However, Plaintiff presents no

evidence to demonstrate that "but for" her complaint the Defendant would not have subjected her

to an adverse employment action.

Plaintiff's attempt to demonstrate that any of Defendant's actions were a pretext for discrimination falls short. To survive summary judgment a plaintiff must point to evidence that could lead a factfinder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not [the cause] of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff has provided no evidence to satisfy either prong.

 Under the first prong of this test, a plaintiff "must demonstrate such weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions in [the defendant's] proffered legitimate reasons for its action" that a fact finder could reasonably infer that the proffered reason "was either a post hoc fabrication or otherwise did not actually motivate the employment action[.]" *Id.* at 764-65. However, a court may not second guess an employer's business decision, so long as it was not discriminatory. *See Robinson v. Matthews Intern. Corp.*, 368 F. App'x 301, 304-06 (3d Cir. 2010) (citing *Ezold v. Wolf, Block, Schorr & SolisCohen*, 983 F.2d 509, 527 (3d Cir. 1992)). Here, the Plaintiff has not satisfied her burden under the first prong. There is nothing in the record that demonstrates implausibility or inconsistencies in the Defendant's explanations. Plaintiff has not presented any evidence to demonstrate that, just because the customer was black, she was treated preferentially compared to her. There is nothing presented in the record to show that Defendant's proffered justifications for the way the incident was handled – to placate a displeased customer – were a "post hoc" fabrication designed to cover up discrimination or retaliation.

Under the second prong, a plaintiff may survive summary judgment by "adducing evidence, whether circumstantial or direct, that discrimination was more likely than not [the but-for] cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.

1994). A plaintiff can provide the following types of evidence: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, individuals [outside the protected class] more favorably." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 645 (3d Cir. 2015). Here, there is nothing in the record which demonstrates that the Defendant's actions were discriminatory, that Defendant previously discriminated against the Plaintiff or others in her class, or that black hair stylists would be treated differently under the same circumstances. Accordingly, Plaintiff has failed to provide sufficient evidence to demonstrate that she was subjected to improper retaliation.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is Granted.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge_____
**Judge John Milton Younge**